UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

CHRISTINE C. BERMANN,

            Debtor.

Case No. 08-28387

Chapter 13

_____

MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO
CONFIRMATION OF AMENDED PLAN

_____

This matter came before the Court on the chapter 13 trustee's objection to confirmation of the debtor's amended plan. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, this decision constitutes the Court's findings of fact and conclusions of law.

BACKGROUND

The relevant facts are not in dispute. The debtor filed a chapter 13 petition on July 31, 2008, and her income is greater than the applicable median family income for a comparable household in the State of Wisconsin. The debtor's amended plan, filed before her original plan was confirmed, provided for a monthly payment of $875.00[1] and a dividend of at least 45% to unsecured creditors over a period of 60 months.

The debtor's original Form 22C reflected a monthly disposable income of $374.30 at Line 59. In her amended Form 22C, there was an adjustment for income taxes on line 30, which is not

---

[1] Since the initial plan provided for payments of $610.00 per month, the modified plan stated she had paid $1,830.00 for the first three months, and she would pay $875.00 for the remaining 57 months, for a total of $51,705.00.

disputed, and she modified Line 47, regarding future payments on secured claims, which is the subject of the trustee's objection. Here the debtor included average monthly payments of $59.00 for homeowner's insurance and $168.06 for real estate taxes, for a total of $227.06. While the debtor's note and mortgage require that the debtor maintain adequate insurance on the property and timely pay her real estate taxes, neither requires the remittance of those obligations into an escrow account. The debtor's amended Form 22C, Line 59, shows that the debtor should be paying $571.27 per month as her projected disposable income to unsecured creditors. *See* 11 U.S.C. § 1325(b)(1)(B). Multiplied by 60, unsecured creditors would receive $34,276.20.

If the trustee's position prevails, the debtor could not deduct the projected real estate taxes and insurance costs, which the trustee alleges are speculative anyway, and she would have the additional $227.06 added to her monthly disposable income. This would increase Line 59 to $798.33 ($571.27 + 227.06), multiplied by 60, so unsecured creditors would receive $47,899.80.

The only secured claim to be paid through the plan is for $5,344.11, which is for the debtor's vehicle. This leaves $46,360.89 in unsecured payments to be made by the trustee, including unsecured trustee fees and other unsecured priority debts. This is less than what the trustee believes the statute requires, $47,899.80, but it is more than what the debtor believes is necessary, $34,276.20. For the reasons stated below, the court overrules the trustee's objection.

## ARGUMENTS

The trustee argues the deductions on Line 47 of Form 22C for homeowner's insurance and real estate taxes are inappropriate because the obligations are not contractually due to the secured creditor. As a result of including those amounts on Line 47, the disposable income on Line 59 is understated.

The debtor contends she should be allowed to include the additional housing expenses for the taxes and insurance on Line 47 because she would be able to do so if her mortgage payment included an escrow requirement for both. When determining a debtor's disposable income, a mortgage with an escrow account should not be treated differently from one without because the mortgage in both instances requires payment of the insurance premiums and taxes.

DISCUSSION

Section 1325 of the Bankruptcy Code governs confirmation of a chapter 13 plan. Section 1325(b)(1) provides as follows:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1).

Section 1325(b)(2), in turn, explains how to determine "disposable income" under section 1325(b)(1)(B). Section 1325(b)(2) provides, in relevant part:

> For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended –
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed.

11 U.S.C. § 1325(b)(2).

To establish some structure to the lengthy and complicated statutory provisions for

3

determining "projected disposable income" and the applicable "commitment period" in chapter 13 cases, the Judicial Conference of the United States has adopted Official Bankruptcy Form 22C, entitled the "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income." Part I of this form involves a calculation of "current monthly income," as defined in 11 U.S.C. § 101(10A). Unless there are certain factors, not applicable here, the current monthly income is the debtor's monthly disposable income, shown on Line 59 of the form. Multiplying this amount by the number of months in the commitment period gives the total required to be distributed to unsecured creditors under the plan. 11 U.S.C. § 1325(b)(1)(B).

Because the debtor has an income which exceeds Wisconsin's median income, she must have her allowable living expenses determined pursuant to "subparagraphs (A) and (B) of section 707(b)(2)." 11 U.S.C. § 1325(b)(3). In addition she is subject to a required "commitment period" of sixty months. 11 U.S.C. § 1325(b)(4). Part IV of the form, which is applicable to above-median income filers, requires that the filer set forth the permissible deductions from income under Standards set by the Internal Revenue Service. Part V, relying upon the gross income and deductions from income amounts contained in Parts I and IV, respectively, seeks to define "disposable income" for above-median income filers for the purpose of 11 U.S.C. § 1325(b)(2). Part VI provides the place for listing any additional living expenses claimed to be allowable under § 707(b)(2)(A)(ii)(I).

For purposes of section 1325(b)(3), the relevant provision of section 707(b)(2)(A)(ii)(I) provides:

The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts

4

specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief ... for the debtor....

11 U.S.C. § 707(b)(2)(A)(ii)(I). Section 707(b)(2)(A)(iii) is the statutory genesis of Lines 47 and 48 of Form 22C and provides:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of –
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
> divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii). "Average monthly payment" is a defined term under section 707(b)(2)(A)(iii)(I) and the definition specifically references amounts "contractually due to secured creditors." This court must then interpret whether funds intended for real estate taxes and insurance premiums, when not held in escrow, are paid "to" the secured creditor.

At Line 47 of Form 22C, a debtor must include her payments on secured claims, which is then included in the total of all deductions from income. Line 47, titled "Future payments on secured claims," previously read:

> Future payments on secured claims. For each of your debts that is secured by an interest in property that you own, list the name of creditor, identify the property securing the debt, and state the Average Monthly Payment. The Average Monthly Payment is the total of all amounts contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60. *Mortgage debts should include payments of taxes and insurance required by the mortgage.* If necessary, list additional entries on a separate page.

Official Bankruptcy Form 22C (04/07) (emphasis added).

5

Case 08-28387-mdm    Doc 26    Filed 01/16/09    Page 5 of 9

The statute did not change, but Line 47 of Form 22C has been modified and now reads:

> For each of your debts that is secured by an interest in property that you own, list the name of the creditor, identify the property securing the debt, state the Average Monthly Payment, *and check whether the payment includes taxes or insurance.* The Average Monthly Payment is the total of all amounts scheduled as contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60. If necessary, list additional entries on a separate page. Enter the total of the Average Monthly Payments on Line 47.

Official Bankruptcy Form 22C (01/08) (emphasis added).[2] While not necessarily binding on this court, "[t]he Official Forms, like the Interim Bankruptcy Rules, were promulgated by the Rules Committee and approved by the Judicial Conference of the United States. Both the Rules and the Official Forms share the presumption of validity." *In re Morgan*, 374 B.R. 353, 361 (Bankr. S.D. Fla. 2007).

In explaining the purpose of Subpart C: Deductions for Debt Payment, the Advisory Committee on Bankruptcy Rules, which drafted the official forms, noted:

> The forms recognize another ambiguity in this connection: "payments contractually due" might either be understood as limited to payments of principal and interest (payable to secured creditor) or, in the context of a mortgage with an escrow, might be understood as including payments of property taxes and insurance (ultimately paid to taxing bodies and insurers, but initially payable to the mortgagee). The forms require the debtor to specify whether the amount deducted includes taxes and insurance, allowing a party in interest to inquire into the deduction and raise an objection.

2005-2008 Committee Note to Forms 22A, 22B & 22C § C.3.

What the Committee coyly refuses to tell us is whether the deductions would be allowable to reduce projected disposable income if the amounts are found to be valid. The earlier version of the form, which stated that "mortgage debts should include payments of taxes and insurance required by the mortgage" seems to imply that these are valid deductions in calculating

---

[2] The same changes were made to Line 42 of Official Bankruptcy Form B22A (Chapter 7).

future payments of secured debts on Line 47. The revised form says to indicate whether such expenses are included in the total payment to the mortgagor, and the committee comment says this is so a party in interest can object. Does this mean a party in interest can object to the amount or to the fact that such expenses are there at all? Perhaps the fact that these charges are not applied to the mortgage debt means they are not paid "to" the secured creditor, notwithstanding that they are included in the same check that goes "to" the creditor each month. If that were the interpretation, neither direct payment nor an escrow would be a proper Line 47 deduction.

Alternatively, such charges could be interpreted as "to" the secured creditor because payment is required by the mortgage contract, and the lender benefits whether paid directly or through an escrow. Also, if taxes and insurance are not paid directly by the borrower, the mortgagee will pay them, and then they become part of the debt that must be paid "to" the secured creditor. The debtor argues it makes no sense to treat these expenses one way with an escrow and another way when the debtor pays them directly. This Court agrees, but it does not solve the problem of how to interpret whether these expenses, required by practically any mortgage, are allowable to reduce projected disposable income of chapter 13 debtors.

There is a dearth of case law on this specific issue. The parties were unable to provide any relevant case law, and the Court found only one case in which the debtors made a similar argument. In *In re O'Connor*, 2008 WL 4516374 (Bankr. D. Mont. Sept. 30, 2008), the chapter 13 trustee opposed the debtors' claim for real estate taxes and insurance on Line 26 of Form 22C because they could not explain why such expenditures qualified as a special circumstance. The debtors argued the trustee's position made no sense because if their mortgage payments had

7

included taxes and insurance they would have been allowed to include them on Line 47. The debtors further noted that allowing the additional expenditures would treat all debtors equally. *Id.* at *11. The court did not decide the escrow issue but sustained the trustee's objection to confirmation. The court did note, however, that the IRS Financial Analysis Handbook includes taxes and insurance in the Local Standards for housing and utilities, which puts a cap on what taxpayers can spend for housing in the collection context. This is addressed on Line 25A and B, but bankruptcy debtors are not so limited if they have debts to secured creditors.

CONCLUSION

While I fully acknowledge that the solution is by no means clear or plain, I believe that a payment requirement in a mortgage that inures to the financial benefit of the lender is a payment "to" that lender, as that term is used in 11 U.S.C. § 707(b)(2)(A)(iii). If the payment is not made, the mortgage undoubtedly allows the lender to make the payment to protect its security and add it to the debt. This would then convert the obligation into a payment "to" the secured creditor. The existence of an escrow is immaterial since payments are only funneled through the escrow account and are not actually a payment to or for the benefit of the creditor until they ultimately reach the insurance provider or the taxing authority. The debt is not reduced by the maintenance of an escrow account; it is only a protective device to keep the debt from increasing if the debtor does not pay the obligations directly. Such payments are required by the contract that creates the security interest, so they can be included in required payments on Line 47.

The trustee's objection is overruled as it relates to the deduction of projected property taxes and insurance. The court will schedule a hearing on the reasonableness of the amount of these expenses. Based on that determination, the court will calculate whether the debtor's plan

8

provides for payment to unsecured creditors of at least $46,360.89.

January 16, 2009

                                              Margaret Dee McGarity
                                              Chief Judge, U.S. Bankruptcy Court